TERESA RICE, Respondent, *v.* MARVIN A. CULVER, Appellant and JULIUS FRIEDERICH, Respondent, Impleaded with Others.

1. MECHANIC'S LIEN — LANDLORD NOT LIABLE FOR IMPROVEMENTS MADE BY TENANT FOR SOLE BENEFIT OF TENANT UNDER PROVISIONS OF LEASE. The owner of land leased for a term of years at a fixed rental to a corporation for a purpose prescribed in the lease, the lessee to have the right to remove at any time before the expiration of the lease all buildings and structures erected by it upon the land, is not liable under the Mechanics' Lien Law (L. 1897, ch. 418, art. 1) for any work done in and upon the buildings erected by the lessee after the execution of the written lease, where there is no evidence that the land-

owner exercised any control or supervision over the performance of the work and where, under the terms of the lease, the work was in no way in the interest of such owner, notwithstanding the fact that the landowner signed an application to the local authorities to have the premises connected with the city water supply, presumably because of some rule or requirement by the city officials that the application should be made by the owner, since to fall within the provision of the statute the owner must be an affirmative factor in procuring the improvement to be made, or, having possession and control of the premises, assent to the improvement in the expectation that he will reap the benefit of it.

2. LANDLORD LIABLE FOR IMPROVEMENTS MADE BY TENANT BEFORE EXECUTION OF LEASE AND BEFORE POSSESSION OF PROPERTY GIVEN TO TENANT. Such owner is liable, however, under the statute, for work done in grading the premises at the instance of the lessee, with the knowledge of the owner, before the date and execution of the lease, where there is no evidence which would justify a finding that the lessee had entered into possession of the premises before the date of the lease, or, that before that time, the owner had surrendered the control and possession of the property to the lessee, since the fact that the owner, being in control and possession of the land, knowingly suffered beneficial improvements to be made upon it renders his property liable for the work.

*Rice* v. *Culver*, 57 App. Div. 552, modified.

(Argued May 20, 1902; decided October 7, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 21, 1901, reversing a judgment in favor of defendant Culver entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles M. Williams* for appellant. The defendant Culver or his lands are not liable for respondent's liens. (*De Klyn* v. *Gould*, 165 N. Y. 282; *Vosseller* v. *Slater*, 25 App. Div. 368; 163 N. Y. 564; *Havens* v. *W. S. E. L. & P. Co.*, 44 N. Y. S. R. 589; 49 N. Y. S. R. 771; 143 N. Y. 632; *Spruck* v. *McRoberts*, 139 N. Y. 199; *Hankinson* v. *Vantine*, 152 N. Y. 20, 29; *Cowen* v. *Paddock*, 137 N. Y. 188; L. 1897, ch. 418, §§ 2, 3, 4; *McCauley* v. *Hatfield*, 59 N. Y. S. R. 552; *Ross* v. *Simon*, 28 N. Y. S. R. 147; *Booth* v. *Kehoe*, 71 N. Y. 341; *Woodhull* v. *Rosenthal*, 61 N. Y. 397.) The

improvements made by the respondents do not, under the
terms of the lease, become part of the real estate; and the
appellant Culver cannot be held liable by reason of the char-
acter of the work of the respondents. (*N. Y. I. Co.* v. *Cos-
grove*, 47 App. Div. 36; *Moore* v. *McLaughlin*, 11 App. Div.
477; *Ombony* v. *Jones*, 19 N. Y. 234; *Vogel* v. *Farrand*, 26
Misc. Rep. 130; *N. Y. L. I. Co.* v. *Allison*, 107 Fed. Rep.
182; *Matter of Welch*, 108 Fed. Rep. 367; *Mass. Bank* v.
*Shinn*, 18 App. Div. 279; *Regan* v. *Borsth*, 11 Misc. Rep.
92; *Conklin* v. *Bauer*, 62 N. Y. 620; *Craig* v. *Swinerton*,
8 Hun, 144; *Cornell* v. *Burney*, 26 Hun, 134; 94 N. Y.
394.)

*John H. Hopkins* for Teresa Rice, respondent. If the
owner of real estate consent that work be done and materials
used thereon, with knowledge of the purpose for which they
are designed, and if the product of the work and materials
become part of the real estate, the owner's interest is subject
to a lien. (*Husted* v. *Mathes*, 77 N. Y. 388; *Nellis* v. *Bel-
linger*, 6 Hun, 560; *Burket* v. *Harper*, 79 N. Y. 273; *Cor-
nell* v. *Banley*, 26 Hun, 134; *McLean* v. *Sanford*, 26 App.
Div. 603; *Lowry* v. *Woolsey*, 83 Hun, 257; 146 N. Y. 375;
*Pell* v. *Bauer*, 133 N. Y. 377; *Decker* v. *Sexton*, 19 Misc.
Rep. 59; *Mosher* v. *Lewis*, 14 App. Div. 565; *N. I. M. Co.*
v. *Upham*, 26 App. Div. 420.) The improvements made by
the plaintiff and the defendant Friederich became, necessarily,
part of the real estate. No agreement between the lessor
and lessee could turn them into chattels, even as between
themselves, and still less as to third persons. Some of the
improvements were not susceptible of removal; and even
where removal by the lessee was possible, it could be effected,
not because the improvements were personal property by
virtue of an agreement between lessor and lessee, but because
that agreement enabled the lessee to sever from the freehold
and remove a portion of the real estate. (*Ford* v. *Cobb*, 20
N. Y. 344; *Ombony* v. *Jones*, 19 N. Y. 234; *H. & D. L. Co.*
v. *Murray*, 47 App. Div. 289.)

*W. H. Sullivan* for Julius Friederich, respondent. Friederich is entitled to a lien as against Culver, he having consented to such work, and the judgment appealed from as to Friederich should be affirmed. (L. 1897, ch. 418, §§ 2, 3; *N. W. P. Co.* v. *Sire*, 163 N. Y. 122; *Mosher* v. *Lewis*, 10 Misc. Rep. 373; *Hartley* v. *Murtha*, 36 App. Div. 196; *De Klyn* v. *Simpson*, 34 App. Div. 436; *Nellis* v. *Bellinger*, 6 Hun, 560; *Husted* v. *Mathes*, 77 N. Y. 388; *Cowen* v. *Paddock*, 137 N. Y. 193.)

CULLEN, J. This action is brought to enforce a mechanic's lien filed by the plaintiff against certain lands in the city of Rochester owned by the appellant. The defendant Friederich is also a lienor. In the spring of 1898 the appellant entered into negotiations for the lease of the premises, which consisted of a tract of about twenty-one acres of land, to the defendant corporation, The Rochester Exhibition Company. These negotiations culminated in a written lease bearing date the 10th day of April, which was executed by the appellant on the 20th day of April and by the exhibition company on the 28th day of April. The work for which the plaintiff's lien was filed consisted of plumbing work and material, and was furnished under a contract between her and the exhibition company dated April 27th. The work was begun on April 28th. The lien of the respondent Friederich was for grading the premises and clearing them of trees. It was also performed under a contract with the exhibition company. The work was begun about the 14th day of March. The lease from the appellant Culver to the defendant exhibition company was for a term ending December 31st, 1902, with the privilege of an extension. It provided that the lessee should not use the premises or permit the same to be used "for any other purpose than the construction, use and maintenance of a general athletic field, with appurtenances; the holding of general athletic games and events, and public amusements and enterprises." It further provided that the lessee should, at the termination of the lease, deliver up the

premises in as good condition as when taken, except the trees necessarily removed by the lessee in preparing the property for its use. The lessee was given the right to remove at any time during the lease all buildings, erections and improvements which it might at any time erect or place on the land. On obtaining the lease the exhibition company erected extensive buildings and structures on the premises. For that work other liens were filed besides those of the plaintiff and the defendant Friederich. The trial court found that the appellant did not consent, within the meaning of the statute, to the improvements made by the lessee and rendered judgment in his favor against all the lienors. From that judgment the plaintiff and the defendant Friederich appealed to the Appellate Division, where the judgment of the Special Term, so far as it affected their claims, was reversed and a new trial ordered. From that order the appellant Culver appeals to this court.

The Appellate Division reversed the judgment of the Special Term both on the facts and the law, and, therefore, if there was any evidence in the case from which the court might find that the appellant consented, within the meaning of the statute, to the performance of the work for which the respondents claimed liens, the order of the Appellate Division must be affirmed or the appeal dismissed, as we have no jurisdiction to review questions of fact. If, on the other hand, there was no evidence to support a finding of consent by the appellant, then the order of the Appellate Division was erroneous and the judgment of the Special Term should be reinstated. We think that there is no evidence in the case which would have justified a decision by the Special Term in favor of the plaintiff. The statute (§ 3, ch. 418, Laws of 1897) provides: "A contractor, sub-contractor, laborer or materialman, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price, of such

labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article." The question to be determined in this case is the meaning to be given to the term " consent." Doubtless, in a certain sense of the word, the appellant did consent to the performance of the work done on his property, for at the time of the execution of the lease he must have known that the lessee intended to make erections thereon in order to use the premises for the purposes for which they were let. But a similar situation is presented in the great majority of demises of real property. If there is a building on the premises the tenant is, in the absence of an express covenant on the subject, required to keep the premises in ordinary repair. (1 Taylor on Landlord and Tenant, § 43 ; *Suydam* v. *Jackson*, 54 N. Y. 450.) It seems that in this state a tenant may erect a new edifice on demised premises, provided it can be done without destroying or materially injuring other improvements, without the consent of the landlord or being subject to the charge of waste. (*Winship* v. *Pitts*, 3 Paige, 259.) Even in the case of existing structures, while the law precludes with some strictness the tenant from making alterations, there is a large field in which he may, without the permission of the landlord, make improvements beneficial to his use, unless they constitute a permanent injury to the estate. It could not have been intended by the legislature (if it had the power) to enact that by the mere demise of land the property of the owner should be subjected to the cost of structures or improvements which the tenant would have the right to erect by virtue of his estate under the lease. There is a marked distinction between the passive acquiescence of an owner in that he knows the improvements are being made, improvements which in many cases he has no right to prevent, and his actual and express consent or requirement that the improvement shall be made. It is the latter that constitutes the consent mentioned in the statute. To fall within that provision the owner must either be an affirmative factor in procuring the improvement to be

made, or having possession and control of the premises assent
to the improvement in the expectation that he will reap the
benefit of it. It was well said by Justice Follett in *Vos-
seller* v. *Slater* (25 App. Div. 368; affirmed, 163 N. Y.
564) : " The term ' with the consent of the owner,' as used in
the statute, implies that the owner has power to give or with-
hold his consent in respect to the construction, alteration
or reparation of the building. In case the vendor in an
executory contract has no authority to require the vendee to
build, alter or repair, and has no power to prevent him from
doing so, his interest cannot be charged with a mechanic's
lien for the erection, reparation or improvement of a building,
ordered by the vendee simply because he (the vendor) know-
ing that the work has to be done and knowing that it is being
done, does not try to stop what he has no power to prevent."
In *Hankinson* v. *Vantine* (152 N. Y. 20) the lease provided
that the tenant should not make any alterations in the prem-
ises without the consent of the lessor under penalty of for-
feiture and damages. Subsequently the landlord released the
tenant from this covenant and agreed that he should have the
right to make alterations and improvements in the building.
It was held that this did not render her estate liable for
improvements or alterations in the procurement of which she
did not participate. It was there said by Judge Martin :
" The simple fact that the appellant gave Riker (tenant) the
abstract right to make alterations in her store at his own
expense, of which consent the plaintiff had no knowledge, by
no means amounted to a consent by her that the plaintiff
should furnish labor or materials to be employed in making
alterations upon her property, especially in the absence of any
notice or knowledge on her part from which such consent
could be implied." Tested by the principle of the cases cited,
the evidence is insufficient to show that the appellant con-
sented to the performance by the plaintiff of the work for
which her lien was filed. There was nothing in the lease
itself that operated as such a consent The case is entirely
different from those in which the tenant covenanted by the

lease to erect buildings or make improvements. (*Burkitt* v. *Harper*, 79 N. Y. 273 ; *Otis* v. *Dodd*, 90 N. Y. 336 ; *Jones* v. *Menke*, 168 N. Y. 61 ; *Hilton & Dodge Lumber Co.* v. *Murray*, 47 App. Div. 289.) In those cases the estate of the landlord was properly held liable because not only did he require the improvement to be made, but the improvement inured to his benefit, either because it reverted to him at the expiration of the demised term or because his rent proceeded from its use. Here the landlord was to receive a fixed rent. It is true the lessee covenanted not to use the premises for other purposes than those prescribed in the lease, but it was not required that they should be used for those purposes. All structures or buildings erected by the lessee were to belong to and be removable by it. So long as the landlord received his rent it was immaterial to him whether the premises lay idle and unimproved or not. It is claimed that the appellant rendered his property liable because he signed an application to the local authorities to have the premises connected with the city water supply. The permit from the city was in no way a prerequisite to the construction of the plumbing furnished by the plaintiff, however necessary it might have been in order to connect that plumbing with the water supply. We presume that the appellant made the application because of some rule or requirement by the city officials that it should be made by the owner. We imagine that the tenant, as an occupant of the land, could have compelled the city to supply it with water on complying with reasonable conditions and security for the payment of the water rates, even though the owner had refused to join in the application. However this may be, the act of the appellant in thus aiding his tenant in procuring the supply of water did not operate to make him liable for the improvements made by the tenant.

It appears by the opinion of the learned Appellate Division that that court felt constrained by the authority of *National Wall Paper Company* v. *Sire* (163 N. Y. 122) to reverse the judgment of the Special Term. We think that the case is

plainly distinguishable from the one before us.   There the
work, which consisted of the decoration of the demised prem-
ises for the purpose of a hotel and restaurant, inured to the
benefit of the landlord, who regained possession immediately
after the work was completed.   The landlord supervised and
directed the performance of the work.   His acts and conduct
were such as to authorize the finding by the trial court that
he actually participated in procuring the work to be done.
This case is barren of the features alluded to.   The appellant
exercised no control or supervision over the performance of
plaintiff's contract.   The most he did was to express satisfac-
tion at the manner in which the work was being performed.
But this satisfaction or approval evidenced no intention to
intervene in the conduct of the work, for under the terms of
the lease the work was in no way in his interest.   We think
there was no evidence in the case authorizing the reversal of
the judgment of the Special Term in favor of the appellant
as against the plaintiff, and that the order of the Appellate
Division should be reversed and the judgment of the Special
Term affirmed, with costs.

The facts relating to the claim of the respondent Fried-
erich differ materially from those under which the plaintiff's
work was rendered.   Friederich began the performance of his
contract on March 14th.   The lease from the appellant to the
exhibition company bears date April 10th, but was not exe-
cuted by either party till several days later.   I think there is
no evidence which would justify a finding that the exhibition
company entered into possession of the premises as a tenant
earlier than April 10th, or that before that time the appellant
surrendered his control and possession of the property   It is
sufficient, however, to say that in the view most favorable to
the appellant the court might have found that the appellant
was in possession and control at the time the respondent
Friederich did his work; and, therefore, for the disposition of
this appeal we must assume that the trial court would have
so found.   We may concede that some of the work done by
that respondent did not create any permanent benefit to the

land, but a portion of it, consisting of removing stone and grading, was beneficial to the estate. Here again the case in the aspect most favorable to the appellant presents simply the question of fact whether the work was beneficial or not. Therefore, a trial court might have found that the appellant being in control and possession of his land knowingly suffered beneficial improvements to be made upon it. We think that these facts would, under the authorities, render his property liable for the work. (*Nellis* v. *Bellinger*, 6 Hun, 560; *Husted* v. *Mathes*, 77 N. Y. 388. See also opinion of FOLLETT, J., in *Vosseller* v. *Slater, supra.*)

· The order of the Appellate Division reversing the judgment and granting a new trial in favor of the defendant Friederich should be affirmed and judgment absolute rendered in that defendant's favor against the appellant, with costs.

HAIGHT, MARTIN, VANN and WERNER, JJ., concur; PARKER, Ch. J., and BARTLETT, J., dissent solely from the affirmance of the order in favor of the defendant Friederich. ·

Ordered accordingly.