LEDRA SMITH, Respondent, *v.* ROSARIO VARA, Appellant.

County Court, Erie County, April 12, 1930.

*Benedict T. Mangano,* for the appellant.

*Congdon & Congdon,* for the respondent.

MOSHER, J.  Plaintiff sues defendant for wiring a house which the defendant sold on contract four years before to his son Samuel Vara, vendee in possession.  All dealings were with the son, who said he owned the property, after which plaintiff did the work.  Before work was done, plaintiff compromised his bill and accepted Samuel's note as agreed, without indorsement.  Samuel paid the interest and renewed the note for another six months, but later abandoned the place, went into bankruptcy and was discharged.  Plaintiff received notice of the bankruptcy but filed no claim.  He received no money for the work.  He learned that the son did not own the property when the place was sold to one Litz about three months after the renewed note was due.  He never talked with defendant about the wiring and never asked him to pay therefor.  Defendant was on the premises at times when plaintiff did the work but never said anything about plaintiff stopping working on the house.

Plaintiff has no claim under the Lien Law for he filed no notice within the statutory period as required by section 10 (as amd. by Laws of 1916, chap. 507) to constitute a lien.  (*Stevens* v. *Ogden-*130 N. Y. 182.)  Therefore, no lien, inchoate, equitable or other,

wise, exists (*Tisdale Lumber Co.* v. *Read Realty Co.*, 154 App. Div. 270; *Deane Steam Pump Co.* v. *Clark*, 84 id. 450), and no personal judgment can be recovered thereunder. (*Maneely* v. *City of New York*, 119 App. Div. 376; *Deane Steam Pump Co.* v. *Clark*, 87 id. 459; *Masons' Supplies Co.* v. *Jones*, 58 id. 231; *Nussberger* v. *Wasserman*, 40 Misc. 120.)

No express contract is shown with defendant, but rather with Samuel, who alone hired plaintiff and gave him his personal, unindorsed note, contemporaneously with the contracting of the obligation, " before work was done," and the note of Samuel — a third person as against the defendant in this action — is presumed to have been taken and accepted in payment and satisfaction (*Dibble* v. *Richardson*, 171 N. Y. 131, 136; *Hall* v. *Stevens*, 116 id. 201, 206; *Gibson* v. *Tobey*, 46 id. 637, 640; *Noel* v. *Murray*, 13 id. 167, 171; *Whitbeck* v. *Van Ness*, 11 Johns. 409), and was discharged in bankruptcy.

In the face of this express contract covering the subject-matter involved, the law will not imply that one existed with the defendant, as a substitute for or an addition to the express contract of the parties, contrary to their intention and inconsistent with the facts and circumstances. (*Miller* v. *Schloss*, 218 N. Y. 400, 406; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 id. 82, 86.) An implied contract is an actual contract circumstantially proved — a true contract resting upon an implied promise, for which the assent of both parties is necessary; and unless they have so conducted themselves that their assent may be fairly inferred, they have not contracted. (*Miller* v. *Schloss, supra; More* v. *N. Y. B. F. Ins. Co.*, 130 N. Y. 537, 545.) No claim was made by plaintiff against the defendant herein until he sued him, without previous demand or dealings, some fifteen months after the original contract with Samuel. (*Eichler* v. *Warner*, 46 Misc. 246.)

Plaintiff contends that defendant's silence gave consent, to be implied from his conduct indicating willingness that the work be done. (Citing *National Wall Paper Co.* v. *Sire*, 163 N. Y. 122; *Wahle, Phillips Co.* v. *59th St.-Madison Ave. Co.*, 153 App. Div. 17; affd., 214 N. Y. 684; *De Klyn* v. *Gould*, 165 id. 282, 287.) These cases merely construe the Lien Law and concern only the impressing of a lien on the owner's interest and so are not applicable here; but even under the liberal construction required by section 23 of that law, the owner's presence, knowledge, acquiescence, failure to object or to attempt to stop the work have been held insufficient to constitute even the statutory consent necessary to subject his interest to a lien unless the work was obligatory or he exercised supervision, authority or control. (*De Klyn* v. *Gould*,

*supra; Rice* v. *Culver,* 172 N. Y. 60; *Spruck* v. *McRoberts,* 139 id. 193; *Tinsley* v. *Smith,* 115 App. Div. 708; *Vosseller* v. *Slater,* 25 id. 368; *Petrillo* v. *Pelham Bay Park Land Co., Inc.,* 119 Misc. 146; *Valenti* v. *N. Y. Theatre Co.,* 99 id. 517; *Eichler* v. *Warner, supra; McCauley* v. *Hatfield,* 28 N. Y. Supp. 648; *Havens* v. *West Side E. L. & P. Co.,* 17 id. 580; affd., 143 N. Y. 632.) Consent must be affirmative, not neutral, in a matter of such material interest to the owner. (*Rice* v. *Culver* and *DeKlyn* v. *Gould, supra; Marsh* v. *Thomson Realty Co.,* 160 N. Y. Supp. 138, 141.)

The Lien Law affects no fundamental principle of the law of contracts and creates no contractual liability which does not otherwise exist; even consent and benefit do not in themselves create an agency or import contractual liability or permit the implication of a contract. (*Brigham* v. *Duany,* 241 N. Y. 435, 439.)

A contract cannot be implied here on the theory of agency for no actual or apparent authority is shown. Samuel was not the defendant's agent, merely because he was his son (*Van Blaricom* v. *Dodgson,* 220 N. Y. 111; *Legenbauer* v. *Esposito,* 187 App. Div. 811; *Heissenbuttel* v. *Meagher,* 162 id. 752; *Atwater* v. *Lober,* 133 Misc. 652, 655) or his vendee (*Brigham* v. *Duany, supra*).

Nor do the facts justify the creation by law of the legal fiction of a quasi or constructive contract by defendant to pay plaintiff upon the equitable principle that he should not be allowed to enrich himself unjustly at the expense of another. "Unjustly" has been construed to mean "without right or wrongfully" (*Roberts* v. *Niles,* 95 Me. 244, 245, 246; 49 Atl. 1043) and "contrary to justice or that which is right" (*Yates* v. *Huson,* 8 App. Cas. [D. C.] 93, 99); and conversely, "just" has been defined as "fair, adequate, reasonable, probable," and "lawful" (*Bregman* v. *Kress,* 83 App. Div. 1, 2; *Matter of Simmons,* 58 Misc. 581, 586) and "just," according to the determination of courts of law and equity (*Martin* v. *Gage,* 9 N. Y. 398); and it must be just to all parties concerned. (*Brainerd* v. *State,* 74 Misc. 100.)

There is no proof that the defendant has been enriched or benefited. (*Vosseller* v. *Slater,* 25 App. Div. 368, 372; *Rice* v. *Culver,* 172 N. Y. 60, 68.) A learned authority, criticising the rule applicable to cases quite analogous, said: "Such a rule * * * does not seem well founded as a mere matter of natural justice. The improvements may be very valuable, but they may be quite unsuited to the use which the plaintiff intends to make of his land. Even if they are such as he would have wished to make, they may also be such as he could not have afforded to make. To compel him to pay for them or to allow for them in damages, which is all the same, is quite as unjust as it would be to lay out money in

any other investment for a man, and then compel him to adopt it *nolens volens.* (Mayne on Damages, 255;" *Woodhull* v. *Rosenthal,* 61 N. Y. 382, 397; *Spruck* v. *McRoberts, supra.*) He did not come by it unlawfully or through the medium of oppression, imposition, extortion, deceit, mistake or other wrong, or under such circumstances that in equity or good conscience he ought not to retain it. (*Miller* v. *Schloss, supra.*) There is no reason in equity or justice why he should be liable. He did not order, or agree or expect to pay. Mere knowledge by a vendor, and failure to object do not obligate him any more than a subsequent grantee who had not promised to pay would be obligated, legally or morally. (*Ross* v. *Simon,* 8 N. Y. Supp. 2.) The vendee is the equitable and potential owner and on payment of the purchase price would become the sole beneficiary of improvements, and the vendor would not naturally expect the property with the improvements to come back to him, as a landlord would at the expiration of a lease. Nor was there anything unconscionable in the vendor receiving it back when abandoned, without paying for the work. If this judgment could stand, no vendor would be safe. A vendee could improve property, without limit and bankrupt the vendor, and so improve him out of his title. (*Vosseller* v. *Slater, supra.*) This result is not unjust to plaintiff, for he got exactly what he bargained for — the personal responsibility of Samuel, and his note, with which he must have been satisfied then, for he filed no lien to protect himself. The fact that Samuel subsequently became bankrupt will not justify making this defendant a vicarious sacrifice by fabricating *nunc pro tunc* a fictitious retroactive contract, which never existed, in equity or justice.

The defendant is not estopped by coming on the property without asserting his title or stopping the work. Equitable estoppel, or estoppel *in pais,* precludes one from asserting his rights against another who in good faith relied upon his voluntary conduct and has been led thereby to change his position for the worse, and arises when by his acts, representations or admissions, or by his silence when he ought to speak out, he intentionally or through culpable negligence induces such other to believe certain facts to exist and such other rightfully relies and acts on such belief so that he will be prejudiced if the former is permitted to deny the existence of such facts. (*N. Y. Rubber Co.* v. *Rothery,* 107 N. Y. 310.) The doctrine is highly penal (*Odlin* v. *Gove,* 41 N. H. 465) and is to be strictly guarded and carefully applied (*Carpenter* v. *Stillwell,* 11 N. Y. 61, 73) and only when the grounds for its application are clearly and satisfactorily established. (*Thompson* v. *Simpson,* 128 N. Y. 270, 292; *Trenton Banking Co.* v. *Duncan,* 86 id. 221.)

Mere silence or passivity do not preclude (*Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458, 462; *Thompson* v. *Simpson, supra*), or failure to object (*N. Y. Rubber Co.* v. *Rothery, supra*), unless he knew or ought to have known that his silence would be relied upon and acted upon and that some injury would result which his statement of the truth would prevent. (*Rothchild* v. *Title Guarantee & Trust Co., supra*.) Mere reticence or omission to assert title does not estop, in the absence of any act tending to mislead (*Woodhull* v. *Rosenthal, supra; More* v. *N. Y. B. F. Ins. Co., supra; Storrs* v. *Barker*, 6 Johns. Ch. 166) unless there is an apparent duty to speak and the silence might operate as a fraud and itself actually mislead. (*Viele* v. *Judson*, 82 N. Y. 32, 40.) A fraudulent purpose or result lies at the basis of estoppel through silence or inaction, which arises only when the omission to speak is an actual or constructive fraud. (*Rothchild* v. *Title Guarantee & Trust Co., supra*.) One may not deny his own acts or admissions which were expressly designed to, and did influence the conduct of another, where such denial will operate. to the injury of such other. (*Welland Canal Co.* v. *Hathaway*, 8 Wend. 480, 483.) Where fraud is not expressly proved, estoppel cannot be based on acts or conduct consistent with honest purpose and absence of negligence. (*Standard Sanitary Mfg. Co.* v. *Arrott*, 135 Fed. 750.) And where the evidence is equally capable of an honest or dishonest interpretation the court must adopt the former in preference to the latter. (*Pollock* v. *Pollock*, 71 N. Y. 137, 141; *Poillon* v. *Poillon*, 78 App. Div. 127, 129.) The burden of the charge and proof of fraud lies on the plaintiff. (*Brinckerhoff* v. *Lansing*, 4 Johns. Ch. 64.)

The defendant did nothing inconsistent with his title. He was under no duty to speak. He had the right to sell on contract and deliver possession (*Vosseller* v. *Slater*, 25 App. Div. 368, 371) and to come on the premises to guard and protect his interest. It would be absurd for him to object or dissent to what the vendee had full and sole power to do. (*Havens* v. *West Side E. L. & P. Co., supra*.) Although he stood silently by without furnishing information of his rights (*Brinckerhoff* v. *Lansing, supra*), he is not estopped, because he had a right to rely on his record title, which gave constructive notice to plaintiff. (*Viele* v. *Judson, supra*.) Where one is chargeable with notice he cannot claim estoppel thereunder. (*Keeney* v. *Bank of Italy*, 33 Cal. App. 515; 165 Pac. 735; *Franklin Sav. Bank* v. *International Trust Co.*, 215 Mass. 231; 102 N. E. 363.) Defendant owed no duty to warn or apprise plaintiff of that which the record discloses (*Porter* v. *Wheeler*, 105 Ala. 451; 17 So. 221; *Thor* v. *Oleson*, 125 Ill. 365; 17 N. E. 780;

*Olden* v. *Hendrick,* 100 Mo. 533; 13 S. W. 821), or of active diligence to protect plaintiff from injury. (*Thompson* v. *Simpson, supra,* at p. 291; *Collier* v. *Miller,* 137 N. Y. 332, 340.)

It does not appear that plaintiff was injured, or even influenced, by any omission, word or deed of the defendant. Apparently he relied solely on Samuel's previous statement that he was the owner, which was in no wise binding on the defendant without proof of his authority therefor or privity between them (*Elmhorst* v. *Maziroff,* 176 App. Div. 145, 149), and he never considered defendant except as an afterthought when recovery from his original obligor failed, but Samuel's subsequent bankruptcy cannot create a retroactive estoppel. The cause must precede the result. Representation or conduct relied on must be concurrent with or prior to the action they are alleged to have influenced (*Hamlin* v. *Sears,* 82 N. Y. 327), and subsequent acts or knowledge have no bearing. Furthermore, Samuel stated no untruth but was the equitable owner, and an " owner " as defined in section 2 of the Lien Law (as amd. by Laws of 1929, chap. 515). (*Ware* v. *Cowles,* 24 Ala. 446; 60 Am. Dec. 482.)

Nor did plaintiff alter his position to his prejudice for he had already contracted with Samuel and completed the work as agreed and can claim no estoppel for doing merely what he was already legally bound to do. (*Organ* v. *Stewart,* 60 N. Y. 413, 420; *First Nat. Bank of Chicago* v. *Dean,* 17 N. Y. Supp. 375; 60 N. Y. Super. Ct. 299, 303.)

Plaintiff was the architect of his own misfortune. It was incumbent upon him to inquire and assure himself that Samuel had title. (*Spruck* v. *McRoberts, supra.*) He did not examine the records, which furnished constructive notice (*Viele* v. *Judson, supra*) and ready means of ascertaining the truth (*McCulloch* v. *Wellington,* 21 Hun, 5, 11; *Collier* v. *Miller, supra*), and it might be successfully contended that he was guilty of laches in not using due diligence in making a proper search. (*Elmhorst* v. *Maziroff, Viele* v. *Judson, supra.*) If defendant's presence was sufficient to create the suspicion of estoppel, it should also have put plaintiff on inquiry to examine the records or ask defendant personally to affirm or deny, when failure to speak might base an estoppel (*Elmhorst* v. *Maziroff, supra*), and his failure to make due inquiry might be deemed negligence, fatal to a *bona fide* claim. (*Williamson* v. *Brown,* 15 N. Y. 354.) His failure to examine the records, or to inquire personally of the defendant and require his signature on the note, or to file a lien, or present his claim in bankruptcy, where, for aught that appears, he might have realized in full or part, invokes the application of the rule that where one of two

innocent persons must suffer, that one must bear the loss whose conduct made it possible (*Muller* v. *Pondir*, 55 N. Y. 325, 335; *Conrow* v. *Little*, 115 id. 387, 392; *Mc Neil* v. *Tenth National Bank*, 46 id. 325, 333) and of the maxim *vigilantibus et non dormientibus jura subveniunt*, for " the laws assist the diligent, and not those who sleep upon their rights." (*Carman* v. *Brown*, 4 Dem. 96, 101; *Popham* v. *Cole*, 66 N. Y. 69, 76; *Kingston Bank* v. *Eltinge*, 40 id. 391, 396; *Dambmann* v. *Schulting*, 12 Hun, 1, 14; *Greenleaf* v. *Mumford*, 19 Abb. Pr. 469, 476.)

The briefs of both parties presume to quote testimony not in the official record on appeal, which, however, is binding on this court until corrected; but in order that an accurate record may be had, the judgment is reversed for errors of law and a new trial ordered before the same justice, at a time and place to be specified in the order, with costs to abide the event.